If it pleases the court, I'm Paul Bland. I represent the appellants in this case. I'm very glad to see the clock is working again. With the court's permission, I'd like to start with the issue of Best Buy being a non-party to the arbitration clause. Given the enormously important decision this court just handed down in the Cramer v. Toyota case, I'm hopeful that this issue will be pretty straightforward, so I'd just like to start with that and make sure I get through it. Best Buy is not a party to these lease documents, so it's not a party to any of the documents that contain the arbitration clause. And there's a basic rule of law that says arbitration is a matter of consent. It's a matter of contract. So if they're not part of the contract, then Best Buy has no argument that the plaintiffs can be held to arbitrate their claims with them. The principal exception to that is equitable estoppel. And the gist of the equitable estoppel, as this Court said in Cramer, is that if the parties are claiming a benefit of a contract and at the same time they're trying to avoid the burdens of a contract, then they can be equitably estopped. So if we came in here and we were saying, well, Best Buy violated their obligations to us, and we have a breach of contract claim, or Best Buy violated the terms of this agreement, but we don't want to follow the arbitration clause, we only want part of the contract and not the other part, then this Court would be in a position to say, look, you can't have it both ways. You're estopped from denying the arbitration clause, and you lose. This isn't like that. In this case, there is no – they're simply making no claims at all under this contract with respect to Best Buy. Best Buy itself denies that the contract has anything to do with it. We are making no reference to the terms of the contract. We're saying that Best Buy violated any terms of the contract. Best Buy has no obligations under the contract. So as I understand your argument, there's two separate transactions going on. One is a service contract with DirecTV, and one is the purchase of equipment to which that service will be provided. Is that right? No, actually, Your Honor, our argument is that people bought this equipment from – that they bought the DirecTV equipment from Best Buy. Is it made – is it manufactured by DirecTV? It's manufactured by DirecTV. And it's equipment that's sold at the Best Buy store. Right. And then so they get home, and at some point later, some of the people allegedly get a document from DirecTV that says, the thing that you thought you bought was actually something that we're leasing to you, and you have to start paying us payments. So the equipment is actually leased. That's what DirecTV says, and that's what – the case is about whether or not that's really true. The argument is that the consumers are all led to believe it's a purchase, and then sometime later, after the fact, they are being ripped off and told, oh, no, the thing you thought was a purchase is actually – Do they have to return it? If they return it, there's a huge early termination fee according to DirecTV. No, but, I mean, at the end of the lease, they have to return the equipment? That is something that DirecTV says, yes, at the end. Okay. So where does the service component come in? So DirecTV sends – now, all of the main plaintiffs in this case say they never got the DirecTV document that was sent – that supposedly sent out. But DirecTV says that they send out to people a lease agreement, and our people deny that that ever happened. But let's assume for the sake of argument that most consumers get this lease agreement. The lease agreement has an arbitration clause, which says if you have a dispute with DirecTV, certain types of disputes you have to arbitrate, and certain types of disputes you don't, sort of thing. And Best Buy, who's the retailer, is coming in and saying, well, we're not named in the lease thing that was sent out from DirecTV to you, but we would like to claim to force you into arbitration under the lease agreement. Now, they say this years after they've been sued, years after DirecTV's been litigating arbitration, as sort of an afterthought. The judge essentially prodded them into doing it. But Best Buy is trying to come in and say, this lease agreement sent from DirecTV to you, which doesn't name us, actually covers us. And we're saying that under the Kramer cases, which is pretty much right on point, that they can't do that. In Kramer, people buy a Toyota from a dealership, and then subsequently they allege that the manufacturer of Toyota is selling Priuses that are defective in various ways, and they're not disclosing that. They're not alleging anything under the contract with the dealer. The dealership has an arbitration clause, and Toyota doesn't. And this Court said there's no equitable estoppel when you're not trying to claim anything under the contract. So that's the argument with Best Buy. Now, if I can turn to the DirecTV lease document. So the DirecTV contract is a very idiosyncratic contract. And essentially, it has a bunch of different choice of law provisions. And I think of them almost as concentric circles. So at the broadest circle is in 10b, it says, this agreement, speaking generally about the entire agreement, is covered by the Communications Act, federal law generally, state law, and so forth. Then, within that circle, they have the next sentence that says, notwithstanding the foregoing, which in the context is clearly talking about the first part of Section 10b, notwithstanding that part, that the arbitration clause in paragraph 9 is generally governed by the Federal Arbitration Act. But then, if you go back and you look at paragraph 9, the arbitration clause, which is a long one. It has all these different sections. One particular section of the arbitration clause, Section 9c, has what's called a jettison clause. And what happens is, is that after the California Supreme Court's decision in 2005 in Discover Bank that said these class action bans are frequently going to be struck down as unconscionable under California law, a lot of companies were concerned that they might end up with the court enforcing the arbitration clause but sending them to arbitration with the arbitrator to do it on a class action basis. And because there's no meaningful judicial review and so forth, companies were afraid of that. Some companies were. So what else? They had a jettison clause, which means, which says essentially, if the class action ban is struck down, then the whole arbitration clause goes away. So if we don't have a class action ban, we'd rather be in court than in arbitration. But what DirecTV did, which is really idiosyncratic, is they said that if your clause is illegal under the law of the state where you live, then the class action, if the class action ban specifically is illegal under the law of the state where you live, then that's, then you throw out the whole arbitration clause. I'm trying to understand. Okay, I'm sorry, I'm talking too fast. No, no, no. Just in general, just trying to understand your theory here of the, how Concepcion doesn't guide us here. And obviously, your argument that the enforceability of the arbitration is governed solely by state law and that Concepcion has no application in this particular case, I think that's how I understand your argument. Well, let me ask this question first then. With respect to Montana or to Masters and Murphy, is there any indication that Montana or Georgia courts would not have enforced these agreements under their state law prior to Concepcion? That was actually with the first appeal. This is the second time we've been in this court. No, I know that. But it seems like you're arguing that we look strictly at the state law even in light of Concepcion. But I'm trying to understand if I got your theory correctly. Am I misunderstanding your theory? Under state law. Yes, that is. And one of the things under state law is under California's choice of law provision that where you have an entity that's based in California that's deceiving people around the country, that California's unconscionability law with respect to the arbitration clause would apply on a nationwide basis. But you're right to point to Montana and Georgia because that's the central explanation of what's going on here. Well, first just answer my question. Okay. Is there any indication that Montana or Georgia courts would not have enforced these agreements even prior to Concepcion? There was no case law in either of those courts. I mean, there was some 11th Circuit case law that indicated that Georgia would strike down class action bans in certain circumstances, but those were not two of the Supreme Courts that had faced this issue. Okay. So tell me your position on Brown v. Investor Mortgage. Distinguish that if you can. Okay, yes. So that's a case where essentially you have a contract that has a general provision that says state law will govern. And what the Court said was that it didn't compare state law with Federal law. So in trying to figure out state law, Federal law, what you do is you look at that provision, you read it as saying state law will only govern except where Federal law governs. Now, in this case, in this case what you have is you do have a contract which has both parts. So in Section 10b, it says the Federal Arbitration Act will generally govern the arbitration clause, but then within Section 9, the arbitration clause, you have this one sentence that's much more specific that specifically talks about the class action ban that says if the class action ban specifically would be unconscionable or unenforceable under state law, then the entire arbitration clause is struck down. So Brown, you don't have both parts. You only have a general reference to state law. And then the question is how does the Court interpret that with respect to Federal  Here we go. Well, in Brown, you know, we say, we noted in Brown the fact that parties chose to apply the laws of Washington does not mean the parties decided the Federal law should not apply. And I'm just trying to figure out what makes this case different. What makes this case different is that in Section 10b, they say the Federal Arbitration Act generally applies to Section 9. But then more specifically within Section 9, Section 9c says, and so under our theory, most, the Federal Arbitration Act applies to nearly all of Section 9. But there is this one provision, this one sentence in 9c, which is much more specific that says if the class action ban, that one part, it's an exception, is if the class action ban is unenforceable under state law, then you strike it down. Now, an important point here is that unlike Brown ---- Let's just say we don't agree with you on that. That's your sole argument here, isn't it? Yes. We have to rely on that in order for you to ---- And if I can expand a couple of reasons why I think it's a fair argument. But, yes, our argument against Direct TV is that they chose to follow state law specifically. And there are a couple of things I think it's important to take into account. First of all, if you read the contract the way they're saying, which is that the language in 10b strikes, knocks away the state law reference, then what you are doing is you're rendering that part of Section 9c, which they added after the Discover Bank case, you're making that superfluous. What does it mean? It means nothing, according to them. It has no value. It has no purpose at all. Now, according to us, what that language does is it governs just the class action ban, and the FAA section governs all these other things. So our reading of it gives both parts of the contract meaning. Their reading of it makes the language about state law in Section 9c completely pointless and meaningless. But that's because they're relying on Concepcion, which later struck down or said that state law was not right. But they made a conscious choice in 2006. Different companies went different ways in 2006 after Discover Bank. Many companies made the Concepcion argument even before Concepcion was adopted. And I understand it didn't work very well, but that was what most companies did. What they did is they made a separate choice, which was they were trying to get rid of the nationwide class action. What they decided to do was to put in language that says the law where you live is going to govern the class action ban. And your argument is notwithstanding what the Supreme Court did in Concepcion, they should be stuck with that language. With that choice. They intentionally put it in when that was the law, the prior law. I'm not sure. How can we infer that they intentionally put that in to deal with the Discover Bank law? I mean, it seems very unlike. Because they came into the district court. First of all, that was their entire argument in the first appeal. And that was what they said several times in the district court. In the district court, after they added this language in 9c, on several different occasions, we cite them in the brief. There's a record 290 to 291, and in the excerpts of records of 83 to 84, they said the way you read all this stuff together is that the law of your state governs the class action ban. That was their argument. They put these pieces together, and that was their argument. So they, they, they, they, I'm not, I'm not trying to mime you. Then they fortuitously had the grace and benefit of the Supreme Court's decision in Concepcion. Right. But the contract that they had drafted in 2006 was based on the world as they, as they understood it at that time. And they made a bet because they were trying to get rid of the nationwide class action. Well, it's an interesting point that, I mean, it's an interesting argument. I mean, whether they're bound by a contract when the law has been subsequently, when the state law has been subsequently changed. But it's an interesting argument. But I'd like to hear your best argument why Best Buy can't be. Best Buy. Why Best Buy, why your case against Best Buy is not subject to our criteria. Our best argument is that Best Buy is not a party to this contract and that we are, we have not made any claims under the alleged contract against them. That we are not invoking any terms. We're not trying to have it both ways. There's, there's just simply no reason to apply equitable estoppel here. This case is just like the Kramer case and it's just like the Mundy case before that. And what they're trying to do is they're saying, well, you know, since we, since basically we're all in cahoots, that, therefore, that means that anything against us is equitably estopped. And that's not what equitable estoppel means. If I can reserve the last comment here. Thank you, counsel. Good morning, Your Honors. My name is Melissa Ingalls and I'm representing Direct TV. Counsel for Direct TV and Best Buy have agreed to split the time, seven minutes for Direct TV and eight minutes for Best Buy. There is just one issue on this appeal with regard to the arbitration agreements between the plaintiffs and Direct TV. And it is the contract interpretation issue of whether or not the four plaintiffs four words law of your state that appear in the arbitration agreement mean that state law exclusively applies without regard to the Federal Arbitration Act. That's what they're trying to convince the court to do in this case. In order to construe this contract, the court needs to know whether or not this arbitration agreement is actually governed by the Federal Arbitration Act. Because if it is, the Supreme Court dictates the overarching interpretation standard that due regard must be given for the Federal policy in favor of arbitration in order to construe this agreement. So is this arbitration agreement between the plaintiffs and Direct TV governed by the FAA? Of course it is. The contract explicitly and unambiguously states that the entirety of the arbitration provision is governed by the Federal Arbitration Act. In fact, it says shall be governed by the Federal Arbitration Act. And in fact, and I wanted to point out that in their reply brief, and I think in oral argument as well, the plaintiffs have now unequivocally admitted, quote, there is no dispute that the FAA applies as a general rule to the Direct TV arbitration clause. That should be the end of the story between the express language in the contract and plaintiffs' admission that the FAA applies to this. Because now the court has to construe the agreement in favor of arbitration as required by the United States Supreme Court. So does this reference, and again, that the application of the Federal Arbitration Act in the contract doesn't have any carve-outs. It doesn't say it applies to everything but one sentence or one phrase. It applies to all of it. So is the reference to law of your State something that now means only State law applies or is it inconsistent? But wait. What did it mean at the time when it was put into this contract? What position has Direct TV taken previously as to what it meant when it was before conception? Correct. It's always meant and it means the same thing it would mean today. And that is that when deciding whether or not an arbitration agreement that's governed by the FAA is enforceable, State law and Federal law have to apply together. Under Section 2 of the FAA, Federal law and State law apply together to determine whether or not there are generally applicable contract offenses to the enforceability of an FAA-governed arbitration agreement. Law of your State, all that meant was that that would be the State law, so long as it's consistent with the FAA, that would be applied to the enforceability of the arbitration agreement. Except that at the time, the law of California was that these kinds of arbitration agreements were unconscionable and were not enforceable. That's true. So isn't that what that meant? What the non-separability provision meant was that when it says the law of your State would, remember, the non-separability provision is written in the contingent future sentence. Tell me exactly where you're reading from. I have the agreement in front of me. You don't have it in front of you? I have it in front of me. Okay. Sorry. The law of your State is N9C. I'm sorry. I don't have the exact page. I think it's SER173. So N9C. Special rules. Correct. If the law of your State would, however, the law of your State would find this agreement with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable, which means that entire Section 9 includes the requirement that the case be resolved only by binding arbitration. Correct. So at the time, the entire Section 9 would not have applied. Under California law at that time. And what we held previously was that it would not be held enforceable under California law or anywhere else if the case was proceeding in California. Well, if we're talking about the prior decision, there was a choice of law decision. That's correct. Yes. And maybe what we need to talk about is the retroactive application of Concepcion. Yeah. Because this is the prior, and this is the law of this case right now that we're talking about. Well, what we're talking about, and this is what Judge Wynn decided down below, which is that they were really trying to say that that language, even though it's written in the future contingent sense, that Concepcion should not apply retroactively to me today. And, in fact, when we moved to compel arbitration in 2008, it was only against plaintiffs from Montana and Georgia where the agreement would have been enforced. Today, it would be enforced in California as well. Concepcion applies back to that time in 2005 and 2006 because Discover Bank never was the law. It was preempted by the FAA. And this arbitration agreement is governed by the FAA. Plaintiffs admit that, and that's what this contract means. The mere reference to law of your state in and of itself cannot preclude the application of Federal law to this provision. Well, it's an interesting argument, of course, because you signed an agreement before Concepcion which stated a certain thing, which our court interpreted a certain way. I think I have to go back and look at Concepcion and analyze its retroactive effect because parties can always contract around Concepcion. Well, sure, but the parties here have not. You agreed to. You could have. You can. Sure. And you could. I assume people could. Yes. But here the parties did not. Well, we don't know that. I think we have to look at the retroactive effect of Concepcion. And that's what Judge Wynn ruled below. And they haven't actually challenged that ruling. Judge Wynn ruled below that Concepcion must apply retroactively because it is a determination of what the law always has been, both on cases open before and after that decision. I just hadn't focused on that particular argument before. So I think I have to go back and look at Concepcion more carefully. Very briefly, the Supreme Court and this Court have both addressed this notion that if you reference law of your state or state law in a contract, that that in and of itself cannot preclude the application of Federal law. The Supreme Court in Fidelity Federal rejected an argument very, very close to what the plaintiffs are saying. And the Supreme Court said, quote, the incorporation of state law does not signify the inapplicability of Federal law for a fundamental principle of our system of complex national policy mandates that the Constitution laws and treaties of the United States are as much a part of the law of every state as its own local laws and Constitution. Under Fidelity Federal, the reference to law of your state can't preclude the application of Federal law because Federal law is a part of the state law. Well, you can't violate Federal law by any agreement. But you can agree to something that doesn't violate Federal law. And arbitration doesn't you arbitration does not necessarily isn't the role of the land. Resolving issues in dispute is the role of the land is going to court. Okay. Okay. But if I understand what you're saying, I'll just reiterate one more time that this arbitration provision is governed by the Federal Arbitration Act. The Federal Arbitration Act preempts the application of state laws that will not enforce arbitration agreements on the condition that they must require. I understand what your argument is. I just think there's a contrary argument that's interesting. Anyway. I know I've taken up more time than I was supposed to, so I'm going to switch off. Okay. Good morning. I'm Roman Silberfeld. Robbins, Kaplan, Miller, and Cerisi from Best Buy. Good morning. The appellants' attempt to catch the interest of this Court have characterized what the district court below did as a sweeping new extension and a looser standard with regard to the applicability of equitable estoppel. In fact, the court below did nothing of the kind. The order in the court below properly recited the standard from the Mundy case, properly set it forth, properly applied it, and recited in addition in the order the evidence in support of not only the misconduct prong but the connection between that misconduct and the underlying contract. And the court was right to do that, of course, because the motion that Best Buy brought to compel arbitration in the first place, that motion properly set forth the two-prong test and recited the evidence and the allegations in the second-minute complaint that support both prongs. The order also made note in footnote 3, and the order is in the excerpts of record at 4 to 8, also made note in footnote 3 that the plaintiffs had failed to even address some of Best Buy's contract claims and had conceded in the court's mind those points, had implicitly conceded them. And as a result, the district court saw no particular need to address them further. And we, of course, agree that Mundy, as now perhaps amplified by Kramer, is the right test. And in all respects, we have met the standard of equitable estoppel here. So the key question on the merits, it seems to us, is do the plaintiffs' claims depend, do they rely, or are they founded in the underlying customer agreement and the lease addendum? And, of course, the answer to that is yes. Unlike Mundy, where there was no allegation in the complaint that referred to the other agreement that had the arbitration clause, and unlike Kramer, where the complaint, again, had no reference whatsoever to the agreement that had the arbitration provision, this complaint, the Second Amendment complaint here, has no less than 15 direct references to the customer agreement and the lease addendum. And Judge Quist, in the opinion in Kramer, thought it was at least helpful to see whether the complaint referred to the other agreement that had the arbitration provision. We're not bound by what was alleged in the complaint, right? True. But the discovery record as well supports exactly what the complaint sets out. And let me just give some examples of the complaint. Well, I want to ask you a question before the time goes out. It seems that you're – I want to make sure I understand your argument. And I guess – have you ever unequivocally argued that Best Buy was, in fact, DirecTV's agent? I don't know that we have. The plaintiff has. Well, I don't know that it has. There's an allegation to that effect, Your Honor, in the complaint. I don't know that – to me, the problem is that Weiss did not allege Best Buy acted as DirecTV's agent, if you go with what an agent is. And it looks like the plaintiff's complaint never suggests that Best Buy represented DirecTV in its dealing with third parties. And for any agency relationship to exist, it seems like the principal must exercise comprehensive and immediate day-to-day authority over the agent's decisions. And I don't see that the plaintiffs make an allegation here regarding the DirecTV-Best Buy relationship. Sure. They actually do. It's at paragraph 68 of the second embedded complaint. And there's a number of subparts there, A, B, C, and so forth, where they recite the connectivity and connection, if you will, between DirecTV and Best Buy in terms of controlling the manner in which these leases are created, the electronic communications that occur between Best Buy and DirecTV in connection with the acquisition by a customer of Best Buy of one of these boxes. And let me just see if I disagree with you. What happens? Well, I think the agency argument is only one of three that were made by us. If we fail on agency, there remain the third-party beneficiary arguments that we get the benefit of the contract and the arbitration clause thereby. And it is, again, separate and distinct from the equitable estoppel argument. So you do not say you're an agent, or do you say you're an agent? We say that the plaintiff ---- I know. But do you say you're an agent? We act. Again, I'm not saying that we're legally an agent. Yes or no. Yes or nay. I think that that is a legal determination that I can't make. Do we act for DirecTV? Are you representing that Best Buy is the agent of DirecTV, yes or no? I think yes, to the extent that we ---- You're qualifying that. Are you an agent under California law or not? I think so. I think that's what's alleged. And I think that that result gives ---- That's interesting. That has all sorts of consequences that you might not be thinking about right now. Well, narrowly to the question of the applicability of the customer agreement and the lease addendum to the transaction. I mean, the plaintiffs recite in the complaint. I know. But under the law ---- Whether or not Best Buy is subject to the arbitration clause is a question of California state law, right? Yes. So the question that I think Judge Murguia was rightfully asking you is, under the law of the state of California, is Best Buy an agent of DirecTV? For purposes of the transaction that caused one of these receivers to come into the hands of Ms. Weiss, I think Best Buy was acting in that capacity. But the equitable ---- Can you elaborate on that? How does it satisfy the law of agency in California? The relationship between DirecTV on the one hand and Best Buy on the other is such that DirecTV ---- I don't think DirecTV has anybody in the Best Buy stores overseeing the sale of DirecTV equipment. Do you? They do not. Yeah. But the Best Buy personnel receive ---- What's the contract between Best Buy and DirecTV? It's a sharing of the revenue associated with the transactions and having the boxes in the stores and available for lease buying. One's a supplier and one's a seller, right? One is a supplier and one is a retailer, yes. Okay. That's not an agency agreement. It's a relationship of a kind. And paragraph 68 of the Second Amendment Complaint sets out the various aspects of that such that Best Buy is certainly involved and, in our view, gets the benefit of the customer agreement and the lease addendum. The receipt, which is specifically set forth in the Second Amendment Complaint, describes the transaction as a hardware lease. It does. And in at least 14 other places, the plaintiff refers to the customer agreement and the lease addendum for the essence of the claim here. The essence of the claim is not that only Best Buy people said something to her, which caused her to believe she was purchasing something. No, they didn't say something to her. They either said something or failed to say something, but those two things, what they said or didn't say, as the case may be at the register, have to be viewed in the context of the larger body of evidence, which is. . . You realize that if Best Buy is the agent and Best Buy engaged in an affirmative misrepresentation, Best Buy is completely on the hook, as is DirecTV, if that were to be found, even by an arbitrator. I understand. Okay. The point here, though, remains that on the question of equitable estoppel, which doesn't depend on agency any more than it depends on a third-party beneficiary. . . It could depend on agency. The third-party beneficiary argument, I'm just trying to figure out the persuasiveness of that because the agreement contains a section for third-party beneficiaries and Best Buy is not listed and there's no indication plaintiffs or Best Buy intended that Best Buy, you know, be third-party beneficiaries of the contract. So it looks, especially in considering whether the doctrine of equitable estoppel applies here, then it looks like we have to look at this agency relationship and whether there is one, and you basically conceded that there is an agency relationship. And so now I'm trying to figure out what to do since that concession has been made here today. The only point where I would disagree, and I realize I'm way over my time, is that, in fact, the plaintiffs do allege that Best Buy is a beneficiary of the contract. And that's why I want to look at your paragraph 68 because I didn't see that they were going as far as what you've agreed to concede to here today. The essence of it, though, and I just want to finish with Kramer, if I could just have 30 seconds for that. All right. You're really over your time, so that's it. In Kramer, the Court said that the prong having to do with the underlying agreement, the Court used these words, has to be founded in or intimately connected to the misconduct that is alleged. There is no question but here that the misconduct that's alleged is tied intimately to that underlying agreement and the lease addendum and the Best Buy receipt that touches both. Thank you. Okay. Thank you very much. Just briefly with respect to agency, at Excerpt of Record 286, Best Buy's contract defined it as an independent retailer. That's not an agent. They're an independent retailer and author. You know, Best Buy also sells Coca-Cola. They're not an agent of Coca-Cola. Section 60, or paragraph 68 that he was pointing to. Yeah. There's a bunch of things in which, I mean, that never uses any word like agency. It never uses any word like direction. It describes a variety of conduct in which they engage together. Well, you kind of are alleging a conspiracy, and now you want to back off those allegations because you want to, you recognize you may be compelled to arbitrate against direct TV but maybe not against. We accept that the conduct has a lot of interrelationships with the conduct. You're saying that Best Buy knew that they were leasing the equipment. They just failed to disclose it. Yes, at some point. Yes, Best Buy had this agreement with them where they were an independent contractor, but they weren't an agent, and they also are not the fact that they were engaged in this conduct together. The only way there's equitable estoppel is if we're saying that there is a benefit under the direct TV contract that we are demanding from them, and then we're trying to deny the arbitration clause. Equitable estoppel is not just interrelated conduct. It's also a connection to the contract agreement, and that's not here. At the point of sale, Mr. Silverfield, got that right, he argued that the receipt stated that it was a lease. The receipts changed over time, and we set this out in our brief. I can't remember the exact dates, but originally the receipts didn't say anything. Then the release said something about you should check your membership agreement, and later it was changed finally at the end to say something about there being a lease. So at the beginning part is what you're – Actually, we think that even when they said the lease at the bottom of this receipt, that it would still be deceptive. I mean, it's something that almost nobody would know and see in real life, and we have a series of allegations about that in the complaint, and there's also a lot of discovery that was taken on the merits to show that that's deceptive. I know I'm over time, but if I can just say one quick thing about the main contract argument. This idea that the Federal Arbitration Act covers the whole arbitration clause because of 10b, it can't be true. And I just urge the Court to look, and we argue this in our reply, but look at Section 9d of the contract. 9d says that there's notwithstanding the arbitration clause, if we catch you basically stealing cable from us, if we think you're stealing the signal, that goes to court. So now what they're saying is that Section 10b, which says notwithstanding anything that the Federal Arbitration Act governs, they would now have Section 9d say, notwithstanding the arbitration clause, this goes to court, but then Section 10 saying, notwithstanding Section 9d, everything goes to arbitration. There have to be exceptions under the way that contract is structured to how much Section 10b carves away things. Our argument that the class action ban is an exception to the general rule of FAA preemption is not crazy. There's other parts of Section 9d which could not possibly be covered by the Federal Arbitration Act. So there's one exception there that no one can deny. Why do something crazy and outrageous that we made up, which is something that they basically were saying again and again, that State law governs this when it's so specific, so different from the Brown case, I think is not unreasonable. All right. Well, thank you very much, counsel. Murphy v. Direct-TV is submitted.
judges: Noonan, Wardlaw, Murguia